IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | | |
|---|---|---|
| DEMETRIA McFADDEN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 09-CV-2273-EFM |
| | ) | |
| CORRECTIONS CORPORATION OF AMERICA | ) ) | |
| | ) | |
| Defendant. | ) | |

**JOINT MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT**

The Parties move for approval of the settlement reached in this conditionally certified Fair Labor Standards Act ("FLSA") collective action. To effectuate a binding release, FLSA settlements generally require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). A copy of the Parties' Settlement Agreement is attached hereto, as Exhibit A (with Exhibit 1 filed under seal) for the Court's review and approval. In addition, Plaintiffs have simultaneously filed a Motion for Approval of Fees, Costs, and Expenses.

WHEREFORE, the Parties respectfully request that the Court enter an Order granting this motion; approving the Parties' settlement; granting Plaintiff's motion for approval of fees and costs; and dismissing this action with prejudice.

## MEMORANDUM IN SUPPORT

This FLSA action was brought and prosecuted on behalf of 251 current and former Assistant Shift Supervisors (a/k/a Lieutenants) who worked in one of over 40 CCA facilities across the country. The Parties vigorously prosecuted and defended this misclassification action for more than two years before ultimately reaching resolution as detailed below and as set forth in the Settlement Agreement. *See* Ex. A.[1] The settlement creates a maximum settlement amount inclusive of damage payments to all Plaintiffs,[2] a service award to the named Plaintiff, and attorneys' fees and costs. Given that this settlement is a fair and reasonable compromise of a bona fide dispute, the settlement should be approved.

## Facts and Procedural History

On May -21, 2009, Plaintiffs filed a Complaint asserting a claim under the FLSA as a collective action under 29 U.S.C. §216(b). Plaintiffs alleged that CCA misclassified its Assistant Shift Supervisors as exempt from the FLSA's overtime requirements and thereby failed to pay them overtime compensation for hours worked in excess of forty (40) hours per week. (Doc. 1). Plaintiffs subsequently filed an amended complaint alleging additional violations of various state wage and hour laws relating their classification as exempt employees. (Doc. 116).[3] CCA filed its

---

[1] Exhibit 1 to the Settlement Agreement is being filed separately in connection with CCA's unopposed motion for leave to file Exhibit 1 under seal.

[2] "Plaintiffs" refers collectively to the named Plaintiff and 250 opt-in Plaintiffs.

[3] Plaintiffs also previously filed a First Amended Complaint to replace named plaintiffs Janet Toole and Barbara McGarity with Demetria McFadden. (Doc. 36).

2

Answer to both the Complaint and Amended Complaint disputing the Plaintiffs' allegations and contending that Assistant Shift Supervisors were properly classified as exempt under both federal and state wage and hour laws among other defenses. (Docs. 21 and 121).

On December 28, 2009, to avoid the expense associated with motion practice concerning initial conditional certification, the Parties filed a Stipulation and Joint Motion Regarding Conditional Certification. The Parties stipulated to conditional certification of a group of current and former Assistant Shift Supervisors who were assigned to the "traditional" Assistant Shift Supervisor function. (Doc. 49). On February 10, 2010, the Court granted the Parties' Stipulation and Joint Motion Regarding Conditional Certification. (Doc. 50). Thereafter, notice of the lawsuit was mailed out and approximately 250 Assistant Shift Supervisors filed (and did not withdraw) consent to join forms in the action.

The notice advised those who joined this case of the terms and conditions under which they were joining:

> If you join this lawsuit you will become an opt-in plaintiff. You will be bound by any ruling, settlement, or judgment, whether favorable or unfavorable. You will also be bound by the terms of, and may share in, any settlement that may be reached. By joining this lawsuit, you designate the named Plaintiff as your representative and, to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into will be binding on you if you join the lawsuit.

Throughout the course of the litigation, the Parties engaged in extensive written discovery. The Parties exchanged multiple sets of Rule 26 disclosures. Plaintiffs propounded Requests for Production of Documents, Interrogatories, and Requests for Admissions upon CCA, and CCA, in turn, served Interrogatories and Requests for Production upon each and every Plaintiff. These discovery requests cumulatively resulted in the production of thousands of pages of documentary evidence, including payroll records, personnel files, corporate policies and procedures, and resumes—all of which were examined in detail by the Parties' respective counsel.

On December 2, 2010, the Parties engaged in an all-day mediation under the direction of mediator Michael Blumenthal in Kansas City, Missouri. On June 7, 2011, the Parties engaged in a second all-day mediation under the direction of mediator Mark Travis in Nashville, Tennessee. Although no settlement was reached at either session, the Parties continued to engage in settlement negotiations and legal and factual analyses of their respective claims and defenses. On March 13, 2012, the Parties successfully negotiated a resolution, the material terms of which were reduced to writing in a settlement term sheet and then further memorialized in the attached Settlement Agreement.

## Settlement Terms

The Settlement Agreement provides that CCA will pay an amount to settle Plaintiffs' claims for unpaid wages and attorneys' fees, costs and expenses under the FLSA in exchange for a release of their wage and hour claims (included related

retaliation claims) related to their employment as Assistant Shift Supervisors under state and federal law.

The settlement will be distributed to all Plaintiffs based on an equitable formula, developed by Plaintiffs' Counsel, that takes into account: (a) the number of weeks worked by the individual Plaintiff as an Assistant Shift Supervisor for CCA on or after the date that is three years prior to the date on which the individual joined the litigation as a party plaintiff, less any time previously released under the settlement of the case of *Barnwell v. Corrections Corporation of America*, Case No. 2:08-cv-02151-JWL (D. Kan.); (b) the individual's salary while working as an Assistant Shift Supervisor; (c) whether the individual participated in discovery in the litigation; (d) state of employment as an Assistant Shift Supervisor for the individual; and (e) whether the individual has asserted a claim of retaliation in connection with the litigation.

The individual settlement allocations are identified in Exhibit 1 to the Settlement Agreement, which was filed under seal. Plaintiffs' Counsel used the following formula to allocate funds to the individual.

    A. First, each Plaintiff was allocated a minimum payment of $200 unless the Plaintiff identified a potential retaliation claim, in which case they were allocated a minimum payment of $1,000. The sum of all minimum payments was deducted from the net settlement fund for distribution (identified in the Settlement Agreement as the Revised Maximum Gross Settlement Amount).

    B. Second, the proportionate share of the remaining Revised Maximum Gross Settlement Amount was calculated as follows:

        (i) Determine the number of "total eligible weeks" each Plaintiff was employed as an Assistant Shift Supervisor during the

5

      applicable class period. The applicable class period shall be defined as three years from the date each Plaintiff joined this case less any time previously released under the *Barnwell* settlement. To determine the total eligible weeks, first determine the number of weeks each Plaintiff was employed as an Assistant Shift Supervisor during the first and second years of the class period. Next, determine the total number of weeks each Plaintiff was employed during the third-year of the class period. For each, determine their discounted third year weeks by multiplying their third year weeks by 50% (to account for Defendant's willfulness defense). Finally, for each Plaintiff, add the discounted third year weeks to the first and second year weeks to determine the total eligible weeks for each Plaintiff.

C. Third, determine each Plaintiff's "Total Individual Factor" as follows:

    (i)    Determine each Plaintiff's "Individual Discovery Factor" by awarding each such individual who responded to discovery by returning a signed verification page or returning documents or a document questionnaire to counsel by the March 13, 2012 deadline a 1.5 multiplier. Each such individual who is not assigned a 1.5 multiplier will be awarded a "0" multiplier for their Individual Discovery Factor;

    (ii)    Determine each Plaintiff's "Individual State Law Claim Factor" by awarding the following multipliers: any person who worked in California, Colorado, Kansas, Minnesota or New Mexico (states where Plaintiffs plead individual claims) received a 1.6 multiplier; and all other employees received 1.0 multiplier.

    (iii)    Add each individual Plaintiff's Individual Discovery Factor to their Individual State Law Claim Factor to determine each individual's "Total Individual Factor."

D. Fourth, multiply each Plaintiff's final bi-weekly compensation while working as an Assistant Shift Supervisor by (i) their Total Individual Factor and (ii) their Total Eligible Weeks. The resulting calculation for each Plaintiff is their respective "Individual Numerator."

E. Fifth, add up the Individual Numerators for each Plaintiff to obtain the "Total Denominator."

F. Sixth, to determine the "Resulting Decimal" for each Plaintiff, divide the Plaintiff's Individual Numerator by the Total Denominator.

6

   G. Finally, to determinate the settlement share for each Plaintiff, multiply the Resulting Decimal by the Revised Maximum Gross Settlement Amount minus the minimum payment amounts.

In order to receive a settlement payment, each Plaintiff must return an Acknowledgement of Release. After a Plaintiff returns his/her Acknowledgement of Release, Plaintiffs' Counsel will distribute the settlement checks to that person. Each Plaintiff will receive two checks: ½ of their settlement will be allocated to Plaintiff's claim for wages and will be reported on a W-2 tax form; and ½ of their settlement will represent liquidated damages and other non-wage relief and will be reported on a 1099 tax form. Plaintiffs will have 60 days to return their respective Acknowledgement of Release and cash their settlement checks. However, CCA agrees to reissue checks one time per Plaintiff should they return their forms and receive their checks outside the established time frame. In exchange for each Plaintiff's receipt of his/her settlement payment, each Plaintiff will have been deemed to release his/her claims as more fully articulated in the Settlement Agreement and the proposed order approving the Settlement Agreement.

In addition, the Settlement Agreement provides for a service payment of $2,500 to the named Plaintiff, Demetria McFadden. Plaintiff McFadden was instrumental in pursuing this case, spent a substantial amount of time working with Plaintiffs' Counsel to investigate the case and further the litigation—all for the benefit of those Assistant Shift Supervisors who will recover under this settlement. Additionally, Plaintiff's Counsel is, concurrently with this Motion, moving for an

7

award of attorneys' fees in an amount not to exceed 33% of the total settlement and for an award of expenses in an amount not to exceed 10% of the total settlement.

## Argument

Settlement of an FLSA collective action requires court approval because private settlements will not effectuate a valid release. *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)); *see also Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Court approval of a private FLSA settlement hinges on a finding that the settlement is the result of contested litigation over a *bona fide* dispute between the parties and that the settlement is fair. *Lynn's Food Stores*, 679 F.2d at 1353.

The Court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

This Court routinely approves similar settlements reached in FLSA collective actions. *See, e.g., Gipson v. Southwestern Bell Telephone Co.,* Case No. 08-cv-2017, Order Approving FLSA Settlement (D. Kan. May 19, 2010); *West v. First Franklin,*

Case No. 06-2064, Order Approving FLSA Settlement (D. Kan. July 31, 2007).[4] This Court should readily conclude the Parties' settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

I. **THE PROPOSED SETTLEMENT IS THE PRODUCT OF CONTESTED LITIGATION**

There is no question the proposed settlement is the product of contested litigation. In their Complaint, Plaintiffs alleged that Assistant Shift Supervisors were misclassified by CCA as exempt from the FLSA's overtime laws. Further, Plaintiffs alleged that CCA did not meet the salary basis test. In its Answer, CCA denied Plaintiffs' material factual allegations and asserted numerous defenses that it argued would defeat Plaintiffs' claims in whole or in part.

During over two years of litigation, the Parties extensively investigated and litigated Plaintiffs' claims, including thorough written discovery and the exchange and analysis of voluminous documents and data. In addition to their factual investigation, the parties also exhaustively analyzed the various legal issues implicated in this case, including the executive exemption, the salary basis test, and proper and/or improper deductions taken from employees' pay checks. Moreover, given the complexities and nuances involved in the salary basis test and executive exemption, Plaintiffs spent a significant amount of time analyzing whether their

---

[4] *See also Archer v. Nat'l Bank of Kansas City*, Case No. 05-2382-KHV , Order Approving Settlements (D. Kan. Feb. 15, 2006); *Brown v. Ameri-National Corp.*, Case No. 04-2510-CM, Order Approving Settlements (D. Kan. Jan. 3, 2006); *Carson v. Bank of Blue Valley, Inc.*, Case No. 04-CV-02507-CM, Order (D. Kan. May 2, 2006); *Carson v. Bank of Blue Valley, Inc.*, Case No. 04-CV-02507-CM, Order (D. Kan. Feb. 23, 2006); *Sohn v. Premier Bank*, Case No. 06-CV-02121-CM, Order Approving Settlement (D. Kan. July 18, 2006); *Niday v. SCK Fin'l Corp.*, Case No. 06-CV-2219-CM, Order Approving Settlements (D. Kan. March 14, 2007).

9

interests would be best served proceeding through trial on a collective action basis or in individual lawsuits.

Prior to settlement, the Parties had a full opportunity to analyze pertinent factual and legal issues and assess the strengths and weaknesses of their claims and defenses. Accordingly, the Court should readily conclude the proposed settlement was the product of contested litigation.

## II. THE PROPOSED SETTLEMENT REFLECTS A FAIR AND REASONABLE RESOLUTION OF A *BONA FIDE* DISPUTE BETWEEN THE PARTIES

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed settlement. Both of these issues are easily satisfied.

### A. A *BONA FIDE* DISPUTE EXISTED BETWEEN THE PARTIES

Plaintiffs allege CCA violated the FLSA and applicable state wage and hour laws because it misclassified its Assistant Shift Supervisors as exempt from overtime requirements. Plaintiffs also alleged that CCA made improper deductions and thus did not meet the salary basis test. Moreover, Plaintiffs alleged that Assistant Shift Supervisors spent the majority of their working time performing the same job duties as the non-exempt corrections officers. CCA denied Plaintiffs' allegations and contended that its Assistant Shift Supervisors acted in a supervisory role, and did not routinely or regularly perform the same work as the corrections officers, and further did not make any improper deductions from

10

Assistant Shift Supervisors' pay checks. Additionally, while the Parties stipulated to conditional certification, the issue of decertification remained. At the time of settlement, it was uncertain whether the case would proceed on a collective action basis, or after decertification, in potentially 251 individual trials.

There can be no doubt that a bona fide dispute over the proper classification of these employees existed between the Parties.

**B.     THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE**

This settlement was the product of arm's-length negotiations by experienced counsel and provides meaningful monetary relief to all Plaintiffs, as well as eliminating inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354; *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery").

Moreover, several additional relevant factors confirm the proposed settlement is fair and reasonable.

### 1. Public Policy Favors Settlements.

Public policy favors settlements. This is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). This litigation was far from complete. While written discovery was significantly underway, the Parties had yet to begin deposition discovery. Further, the Parties both anticipated filing motions for summary judgment. Additionally, as discussed above, this case had not proceeded through final collective action certification and may have ultimately been decertified. Had the case been decertified, Plaintiffs intended to move forward with individual trials. The Parties and the Court are able to conserve a significant amount of cost, time, and judicial resources in settling this litigation now.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief.

The Parties strongly disagree about the merits of Plaintiffs' claims and the viability of CCA's defenses. If litigation continues, the Parties would face many obstacles, including (i) collective action certification or decertification; (ii) motions for summary judgment and potential other dispositive motions; and (iii) one, if not hundreds of jury trials. Further, even if Plaintiffs prevailed on liability, Plaintiffs faced CCA's arguments against both the nature and extent of Plaintiffs' damages,

as well as the uncertainties associated with Plaintiffs' estimates regarding their hours worked.

The proposed settlement brings substantial value as set forth in Exhibit 1 to the Settlement Agreement. Although the recovery at trial could have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, or nothing at all. Were CCA to succeed in proving Assistant Shift Supervisors were classified as exempt, Plaintiffs would be entitled to zero recovery.

In the face of these material disputes, it is significant that this settlement brings Plaintiffs monetary value now, as opposed to years from now, and provides certainty regarding the outcome. *See In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

### 3. This Was a Complex and Potentially Lengthy Case.

This case is complex, both as to liability and damages. Complex issues of fact and law, some listed above, remain unanswered and would have to be resolved at or before trial. Trial would have been lengthy, costly, and complex—whether one representative trial or potentially hundreds of individual trials. Plaintiffs would need to provide documentary evidence, representative testimony, and possibly

13

expert testimony sufficient to establish liability and damages for the Plaintiffs. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed settlement.

### 4. The Parties and Their Counsel Support the Settlement.

The Parties and their respective counsel have spent a significant amount of time investigating the facts and law as they relate to this case. Additionally, the Parties exchanged and analyzed hundreds of thousands of payroll records and other documents before sitting down to mediate. There is no question the Parties were fully informed regarding the risks and benefits associated with proceeding with this case versus settling. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica*, 210 F.R.D. at 702. Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' Counsel believe the settlement is fair and in the best interests of the Plaintiffs. Accordingly, the Parties respectfully suggest this Court should conclude the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute under the FLSA and approve the settlement.

### III. THE NAMED PLAINTIFF SHOULD RECEIVE SERVICE AWARDS

The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d

1249, 1271 (D. Kan. 2006) (awarding $5,000 service award to each of four class representatives); *see also Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 (W.D. Okla. 1993) (awarding $10,000 service award to each of three class representatives). This District has approved a service award of $5,000 even where the named plaintiff was not deposed. *Bruner v. Sprint/United Mgmt. Co.*, 2009 WL 2058762, *11 (D. Kan. July 14). Here, Plaintiffs request a smaller service award of $2,500 for the named Plaintiff, Demetria McFadden, who provided significant service to the prosecution of this case.

Ms. McFadden substantially assisted counsel in achieving this settlement on behalf of the opt-in Plaintiffs, and should receive a service award. When it was determined that the original named plaintiffs were not capable of proceeding in that role, Ms. McFadden stepped up and took over the representative leadership role for the 250 opt-in plaintiffs. Over the past two years, Ms. McFadden has spent hours many responding to written discovery and providing Plaintiffs' Counsel with valuable guidance and assistance on numerous occasions, including in reaching this settlement. There can be no doubt the opt-in Plaintiffs have all benefited from the time and effort Ms. McFadden has put forth in bringing about this result. In light of these efforts, payment of a modest $2,500 service award to the named Plaintiff is amply justified.

## Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the parties under the FLSA. The Parties spent over two years investigating and litigating this action and both remained exposed to

significant risk should the case proceed. The settlement is fair, reasonable, and adequate, and provides Plaintiffs with significant relief now. For these reasons, and those set forth above, the Parties respectfully request that the Court approve the Settlement.[5]

Dated: May 29, 2012                    Respectfully submitted,

/s/ Virginia Stevens Crimmins
George A. Hanson, KS #16805
Virginia Stevens Crimmins, KS #20617
Ashlea G. Schwarz, KS #23491
**Stueve Siegel Hanson LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Business Tel: (816) 714-7100
Fax: (816) 714-7101
Email: hanson@stuevesiegel.com
Email: schwarz@stuevesiegel.com
Email: crimmons@stuevesiegel.com

Brendan J. Donelon, KS #17420
**Donelon, P.C.**
802 Broadway, 7th Floor
Kansas City, Missouri 64105
Tel:   (816) 221-7100
Fax:   (816) 472-6805
Email: brendan@donelonpc.com

/s/ Erin A. Webber
Erin A. Webber, KS 70548
**Littler Mendelson, P.C.**
2300 Main Street, Suite 900
Kansas City, Missouri 64108
Tel: 816.448.3558
Fax: 816.817.0735
Email: ewebber@littler.com

*Robert W. Pritchard
**Littler Mendelson, P.C.**
625 Liberty Avenue, 26th Floor
Pittsburgh, Pennsylvania 15222
Tel: 412.201.7628
Fax: 412.774.1957
Email: rpritchard@littler.com

---

[5] The Parties have submitted a proposed Order granting approval of the Settlement. The proposed order is also included as an exhibit and incorporated as part of the Settlement Agreement The Parties respectfully request that the Court enter the proposed Approval Order as an Order of the Court.

16

Jason Brown, KS #70700
**Brown & Associates, LLC**
301 S. US 169 Hwy
Gower MO 64454
Tel: 816-505-4529
Fax: 816-424-1337
Email:  kclawyerbrown@yahoo.com

**ATTORNEYS FOR PLAINTIFFS**

*Margaret T. Blackwood
**Littler Mendelson, P.C.**
3344 Peachtree Road, N.E., Suite 1500
Atlanta, Georgia 30326
Tel: 404-760-3967
Fax: 404-529-4456
Email:  mblackwood@littler.com
Email:  bandrews@littler.com

*admitted pro hac vice*
**ATTORNEYS FOR DEFENDANT**